The panel has before it a total of six cases, the latter two of which are being decided without oral argument on the brief. They are Appeal No. 05-3235, Newell v. Merit System Protection Board, and Appeal No. 05-3330, Williams v. Office of Personnel Management. On the four-case argument list, we'll hear argument first in Appeal No. 05-3088, Zwagil v. General Services Administration. Mr. Howes, good morning. Welcome. Please proceed. Good morning. May it please the Court. As the record in this case demonstrates, the petitioner, Mr. Zwagil, is attempting to get this Honorable Court to reinstate him or to remand his case back to the agency for reconsideration of the penalty imposed. As the Court knows, Mr. Zwagil is a 25-year veteran police officer with the General Services Administration, now part of the Department of Homeland Security, and we believe that this Court should enter that kind of an order on Mr. Zwagil's behalf for three principal reasons as enunciated in our brief. First, we believe that the record below does not demonstrate that the agency proved that the petitioner, Mr. Zwagil, deliberately refused to carry out any dictates or mandates in conjunction with his job. In fact, the evidence presented only supported the fact that he had failed on some occasions to check certain buildings which were part of his duties, but not that he deliberately failed to check certain buildings or deliberately failed to do any of the job that he had been assigned to do. Isn't the issue there whether substantial evidence supports the deliberateness finding, if I can call it that, of the district judge? Yes. And as I recall, the only evidence that it was not deliberate was that on two of the occasions, I think in November, he had been detained for about an hour by a specific urgent assignment, which would have reduced his time to visit all the other buildings to that extent. But how can we say that the evidence was less than substantial when I thought there was testimony, I guess, by his supervisor, Lieutenant Mount, that even with the approximately one-hour diversion, there was still plenty of time to visit all the other buildings on his assignment list? A couple of reasons, Your Honor. One of them is that Mr. Zweigel provided testimony, and so did another officer from the GSA, which indicated that, one, he had not been instructed to visit all those— on those two occasions, there was still time to visit all the rest of the buildings. One of the problems with that, Judge, is that Mr. Zweigel, the testimony was that Mr. Zweigel did visit some of those buildings, even though Lieutenant Mount said he didn't. And the reason that he did visit but Lieutenant Mount didn't know it is because Mr. Zweigel could not get into the area to sign the log-in sheet, because the buildings were closed on Saturdays and Sundays, or the sheet was otherwise in a secured area. So Lieutenant Mount was testifying based on records that he had with him, but in actuality— But the testimony had to do with whether there was a sufficient number of hours left to visit the buildings. Yes, sir. And I don't understand how the testimony that there was sufficient time left can be less than substantial evidence. Under the circumstances, because Mr. Zweigel had so many buildings to check, the instruction that he had was to check as many buildings as you can during the course of your eight-hour shift. So he certainly couldn't check every single building every single day, and that's what Lieutenant Mount was holding him accountable to. And that's what was improper and unfair under the circumstances, and did not meet the substantial evidence test under the circumstances, especially, Judge, in light of the fact that Officer Evelyn Graham testified that she, too, couldn't meet— Well, whatever—is your defense, then, impossibility? I mean suppose, hypothetically, there were 15 buildings that your client was assigned to visit. Is it your contention that no matter how diligently he or any other so-assigned officer worked, they couldn't possibly get to all 15 buildings? Yes, sir. That's exactly my contention. And what testimony supports that? The testimony that, one, that Officer Zweigel had other duties to perform besides checking his building. Two, that the lieutenant knew and even demonstrated, and even testified, I believe, the record will show, that he even testified that he wanted Mr. Zweigel to get as many buildings as he could. And thirdly, there was a memorandum in the record that the administrative law judge, Judge Stevenson, identified that says that he is supposed to routinely patrol these buildings as often as he possibly can. I thought the testimony was that he was supposed to get as many posts as he could. Yes, sir. Not as many buildings. Yes, sir. Right? Well, there is a difference, but some of the posts are contained within the buildings. That's the problem we have. Yeah, but the issue here isn't whether he visited every floor or every post. The issue in this case is whether he visited every building. And so the distinction Judge Zweigel makes is very important. Also, it seemed to me clear what the requirement was from the November 14, 2002 memo from Lieutenant Mount to all of his subordinates. Which in three paragraphs makes it, I think, crystal clear that every one of those officers must visit every building at some point each day. But Judge— So I don't know where you're getting this idea that Lieutenant Mount told him he only had to go to some of the buildings or some of the times. Well, that was testimony that was provided by Mr. Zweigel in his defense, and Officer Graham testified to the same thing, that she couldn't possibly get all of her buildings all of the time and often didn't get all of them. I thought her testimony was that she didn't visit every building, not that she couldn't. There's a big difference. Yes, sir. Am I correct? She just testified that she didn't. But she also testified that nobody came after her. She was never charged. She was never disciplined. She was never called down for that. That may be. Yes, sir. Of course, there's an issue of whether she's similarly situated, because she wasn't under a performance improvement plan, whereas your client was. She was relatively new, about two years. Your client had been there for decades, and your client was found to have failed day after day after day to visit all the buildings. We don't have any comparable data as to the extent of the dereliction by Ms. Graham, so it seems to me very questionable whether they're similarly situated within the meaning of the case. Well, one of the things that we don't think that the record makes sufficiently clear is whether or not the records that Lieutenant Mount testified from actually demonstrate that Mr. Zweigel had visited those places, or whether those records were just in error or incomplete. Because Mr. Zweigel's testimony was that, in fact, he had visited some of those places, but he couldn't get to the location to sign the sign-in sheet. So Lieutenant Mount would think by looking at the records before him that Mr. Zweigel hadn't been there, but in fact he had. And there wasn't a clarification of that because there was really no way to tell based on the documents that were presented. The second grounds that I think is important for Your Honors to consider is that the circumstances, considering a Douglas analysis and the gravity of the penalty imposed, if Your Honors will address my argument about the— Collect my argument about the gravity of the offense and this not being deliberate. I mean there's been no testimony, and there was nothing presented that Mr. Zweigel was at a donut shop. There was nothing presented that he was doing anything personal business on the time. The only testimony was that he didn't meet certain places and get to certain locations. If that's the case, and if his conduct was not deliberate, then one of the first components of the Douglas factors is for the employing agency to determine whether or not the conduct on the part of Mr. Zweigel was deliberate under the circumstances. If it wasn't deliberate under the circumstances, then perhaps the gravity of the penalty, which in this case was termination of employment, may have been that it was too great. What else could the agency do? I mean he had been disciplined before for the very same violations. He was under a performance improvement plan in August through November, and he continued in both those time frames to not visit all the buildings. At that point, what is the agency supposed to do? They have to escalate the penalty or acquiesce in nonperformance of the basic requirements of the job. It's hard for me to understand how in that circumstance, with that history, the agency was excessively harsh in removal. This gentleman had served 25 years with the United States government. That was taken into consideration, but nevertheless, whether it's 20 years, 30 years, or any other number of years, if you have a pattern of repeated infractions of the same kind, including throughout a performance evaluation period of several months, I think the agency scarcely has any choice under that circumstance except to remove an officer. What's your response to that? I think under the circumstances, there could have been alternative mechanisms addressed. For example, some kind of retraining. He had already been given lesser punishment in the form of suspension, as I recall. So, of course, lesser forms of punishment are available, but when they've already been tried and didn't work, how can the agency be acting unreasonable under that circumstance and imposing the harsher punishment? Because I think they should have given greater weight to the fact that Mr. Zweigel's actions were not deliberate. And he had been a 25-year veteran employee and had even – and, of course, the record doesn't demonstrate it, but for the first 20 years of his employment with the agency, he had gotten accolades and commendations, and he had done an exemplary job. But the agency doesn't have to suffer nonperformance in the last five years because in the first 20 years, somebody was a perfect employee. Yes. An employee has to meet at least the minimum requirements throughout his entire tenure. You can't excuse five years' worth of nonperformance because a decade before the performance was perfect. That's just not reasonable to say an agency has to accept that. But when a longtime employee is put on a performance improvement plan and then singled out and treated differently than the other employees in the agency who are apparently doing the same thing that this particular employee was, then it begs the question as to whether or not the propriety of the penalty was just far too severe. In other words, were they singling out Mr. Zweigel because they thought, well, we gave him a couple of chances, and we're going to make it particularly hard on him. And under the circumstances, I think that's what's happened here. They decided that they wanted to get rid of him, and they singled him out and treated him disparately for purposes of eliminating him from their employ. And I think that that was inherently improper. Was there any evidence as to disparate treatment other than with respect to Mr. Graham? I believe there was some mention of the fact that other officers also did not hit all of the posts and all of the buildings on a regular eight-hour shift. What was the source of that evidence? I believe that came from Officer Graham herself. All right. Do you want to save the rest of your time for rebuttal? Yes, sir, I do. Thank you. Thank you, Mr. Howell. Mr. Harrington. Good morning. Please proceed. May it please the Court. This matter is sent to the district court. Mr. Harrington, do you have your brief with you? Yes, I do. On page 16 of your brief, you argue that the petitioner's argument here that the threats were important to the agency wasn't a tenable argument because the agency's decision memorandum is not susceptible to the construction that they were giving. And you quote from the decision memorandum, but you leave out in that quote the last sentence of the quote, which exactly supports what they're saying. Isn't that last sentence pretty pertinent to their argument? The last sentence is part of the memorandum, Your Honor. Well, why didn't you quote it? The part we quoted points out that the agency considered the offense that was sustained a very serious offense and that it, in itself, justified— No, but you're not responding to my question. What you say is that their emphasis on the threat charge isn't supported by the decision memorandum. Then you quote the decision memorandum, and you say it's not susceptible to their interpretation. But you leave out the key sentence, which does say that the threat charge is very important. The threat charge was one of the important things, the point that we're trying to make here. And that particular language had already been quoted in the principal brief by Mr. Zweigel. This was quoted for the proposition that the charge that was sustained, that Mr. Zweigel was failing to carry out his duties, was likewise important to the agency. But doesn't the sentence that you left out exactly support what they're saying, that the threat charge was important in the decisional process? The threat charge was also important, Your Honor. Let me take a step back, however, and talk about the process that— Well, Mr. Harrington, you really need to answer the question that was asked. You're answering other questions. The question had to do with whether it's pertinent. And I take it your answer is yes. Certainly the whole decisional memorandum— No, the missing sentence is pertinent. And it's not acknowledged that it's missing. Perhaps if the document were rewritten, we would include that particular sentence. There is one other point I'd like to make on this, though, Your Honor. The question isn't on the merits. The question has to do with whether counsel is misleading the court by quoting many sentences from a document and omitting the one sentence that supports the other side. That's a very important point. I don't understand you to have explained why you think it was okay to have omitted that sentence. Your Honor, my understanding of the point that we are trying to make here is that the charge that was sustained, the failure to carry out Mr. Zweiglin's duties, was important to the decision to remove him. It was not the only thing. There were two charges. The other charge was also important to the decision to remove him. Now, if I understand the way our case law is developed in this area—and correct me if this is a mischaracterization, but generally we're all the same, you know, there's simplification— but the gist of it is that if we look at the record, some of the charges that were found by the agency are sustained, others are not sustained, and there's some indication in the record that the agency would have imposed the same penalty even without the non-sustained charges, then we uphold the penalty. If we conclude, however, that there is no indication that the agency would have done so, and we are incapable of concluding, based on the record, that the unsustained charge was insignificant in the context of all of the charges that were sustained, then we remand either to the board or for the board to remand to the agency for a new penalty determination to provide confidence, either a different result or confidence that the result that the agency has achieved was what it would have intended to achieve absent the non-sustained charge. Is that a fair statement of the rule that we've applied in past cases, or have I deviated somehow from it? I think it is at least very close to the rule, Your Honor. Okay. My understanding of the rule is that when one or more of multiple charges are sustained, when one charge is not sustained, the board will look to impose the maximum reasonable penalty based on the sustained charges. Unless— Yes. And here is your point. Unless the agency has indicated that it desires some specific lesser penalty. Well, that leaves us with the third category, the middle area, which is, in my experience, the more common situation, which the agency hasn't specifically said we would impose this penalty even if some of the charges are not sustained. They don't anticipate that any of the charges will not be sustained. So the typical decision notification in my experience is you've been found to have violated A, B, C, and D, and the consequence of which is you're removed, not we would remove you if it's A, we would remove you if it's only B, we would not remove you if it's only C. So my impression of our case law is that we have to make an independent determination as to whether we are confident that the non-sustained charge is, in the agency's reasonable view, fairly trivial compared to the sustained charges. Is that consistent with your understanding of where we are in our case law? I think largely, Your Honor. I think here it's important to point out that we're not in that middle category. Well, that's… Well, go ahead. And the reason I say that is the way the charges came about in this case. Well, I understand. Just to cut quickly to the chase here, I don't want to use up all your time on this, but I understand that the proposed removal, of course, occurred without reference to the threatening conduct, which, of course, the threatening conduct was in response to the proposed removal. Exactly. But the key element in assessing penalty, the reasons for the penalty and so forth, is not the proposed removal, but it's the decision-maker, the actual removal decision, right? I mean, you don't look… If the decision-maker had said, for example, I don't think that the conduct itself, the unsuccessful commission of the performance is enough, but thrown on top of that, there's this threat and that's enough to persuade me removal is appropriate. In those circumstances, we wouldn't pay any attention at all to the proposed removal, right? We'd focus entirely on the removal notice, correct? I think that that would be the focus, yes. And so, we look at the proposed removal notice and what do we find in trying to answer the question as to whether to this deciding official the threatening conduct was significant. Was it less significant, significantly less significant than the performance-related conduct, or was it more significant, more important than the non-performance? And we find the words, which I'm struggling with, more importantly, more importantly, and then a reference to the threatened conduct. That sounds to me like prima facie evidence that that conduct was the conduct that really was the most significant part of the offending conduct. Why isn't that the right view of the state of this record? Well, Your Honor, it's also worth pointing out that the deciding official did testify during the hearing before the board. The deciding official was, I believe, Mr. Creco. Right. And during his testimony before the board, he did not indicate any desire to impose a lesser penalty. But was he asked, would you have given the same penalty without the threatening conduct comment? I don't believe the question was posed that directly, Your Honor. But I do believe he testified as to the weighing of the factors and as to the seriousness of the charge that was sustained, that Mr. But where do we find that? I don't have a particular record site here. Is there any question that the Lachance line of cases that Judge Bryson is referring to applies equally to the board? In other words, the Lachance cases deal most directly with situations where we find that one of the charges isn't sustained. If the board is the entity that finds one of the charges isn't sustained, doesn't it have to apply the same analysis that Judge Bryson is talking about as we would? I believe that's correct, Your Honor. I believe what the board does when fewer than all charges are sustained is that it looks to mitigate to the maximum reasonable penalty. Based on the sustained charges, absent some indication in the record, and here there was testimony, as I say, of the deciding official, in addition to simply the decision memo itself, absent some indication that the agency desires a lesser penalty. But the administrative judge here didn't address the question that Judge Bryson was asking about, did he? The deciding official— The administrative judge. Excuse me, the administrative judge. My recollection was that he did say that he was mitigating or that—let me take a step back and try to rephrase that. He did say that the penalty that was imposed was reasonable based on the findings. Yet he said that, but he didn't address the question of whether the agency might have imposed a lesser penalty if the threat charge had not been sustained. He didn't address that at all. I think the point that Judge Dikus is calling your attention to is on page 8 of the administrative judge's opinion, and I think it's correct that the administrative judge spoke to the reasonableness of the penalty, but not the question of what the agency would have done absent the non-sustained charge. That seemed to me to be a fair reading of that middle paragraph there. I think that one thing that he said was that the deciding official considered reassigning the appellant to another position as one possible sanction and found that no suitable positions were available. And that's hardly surprising given that the sustained conduct was that he was failing to carry out his duties, basic duties for any officer in the Federal Protective Service, duties that he had not carried out and had been suspended for twice before. Why shouldn't we see this back to have the administrative judge, to have the board, address this question that's raised by the LaChanze line of cases as to whether this matter should be remanded to the agency to consider the question of whether they wanted to impose the removal penalty given the fact that the threat charge was not sustained? Your Honor, I believe that the record taken as a whole indicates that they charged him, sought to remove him, based solely on the failure to carry out his duties. The past performance history indicates that the only sanction that would be available that would be an increase in sanctions at this point would be his removal. The deciding official testified below and gave no indication that a lesser penalty was designed. The record as a whole— But also no indication that he would have imposed the same penalty if the threat charge had been out of him, right? I think that he indicated the seriousness of the failure to carry out his duties charge. And the fact that Mr. Swagel had been charged twice with this very same misconduct was on a performance improvement plan. The performance improvement plan that he was— You don't have your appendix with you? I do have the appendix with me, Your Honor. Can you show us where the testimony is? Or you don't have the page for that? I don't have a specific page set for that. But I can tell you, for instance, and here would be page A266. He was disciplined in May 2000 for failure to visit all buildings in accordance with his sector orders. The May 16, 2003 notice of his suspension told him his standing orders each day are to patrol all assigned buildings. He again wasn't doing that. That charge was sustained. That would be at page A251. His August 18, 2003 performance improvement plan warned him that he was not patrolling all the buildings to which he was assigned at page A238. And the performance improvement plan's first goal read, I expect you to read and follow your assigned sector and post orders. Again, that is exactly what he was not doing in November of 2003, just a couple of months after the performance improvement plan had been implemented. Was there any testimony of the feasibility of visiting every building on his list? Yes, Your Honor. Lieutenant Mount testified that it was possible, that his orders were possible to carry out. And in fact, the buildings that, if you look at the sector orders, they have a standard grouping of buildings that runs throughout those sector orders. There are some in the administrative record. These are the sorts of groupings of buildings that are performed day after day. And on some days, as Lieutenant Mount testified, Mr. Zweigel, in fact, was able to carry them out. On other days, as Lieutenant Mount testified, he chose not to. He didn't have any reason he couldn't, but he chose not to. When you say he chose not to, what's the evidence of that? What was he choosing to do when he chose not to go to the last five buildings or whatever the number would be? I cannot say precisely what he was doing during that time, Your Honor, but, for instance, on November 12, 2003, he did not patrol 9 of 15 buildings. That's 60% of the buildings to which he was assigned at a time that he was under the performance improvement plan, knew that he was supposed to hit all of his buildings. He had a task that took him about 70 minutes during his 8-hour shift, about just over one-eighth of the time on his shift, and he didn't visit more than half of the buildings. All of these buildings are in the Baltimore metropolitan area. They are not spread dramatically far apart. How many buildings are there? On this particular day, there were 15 that he was assigned to patrol. He hit 6 of them, 6 of the 15 on this day. He didn't hit 9 of the 15. But it was the same 15 buildings on his orders pretty much continuously throughout the relevant time period? The guards would be shifted from grouping of building to grouping of building, so he wouldn't hit the same 15 buildings every single day, although that same grouping of buildings would appear, for instance, on some other guard's assignment. Do you know if the way this case was presented to the administrative judge at the board was as two separate charges, or did the administrative judge interpret the decision letter as presenting two separate charges, one being the performance charge and the other being the threat charge? And that's certainly the way the administrative judge seems to have interpreted the decision letters, but I wonder whether that's the way it was presented to the administrative judge. The one thing I can speak to definitely is that he interpreted it that way. Yes, you're right. I do not remember off the top of my head how it was presented. I know it was presented originally as one charge, failing to carry out his duties, and that I believe a second charge was added, but I would have to go back and check. There's a peculiar aspect of this. You alluded to it earlier when you pointed out correctly that this event didn't occur until after the notice of proposed removal. It's really not cricket, technically, to add charges after the notice of proposed removal. You're really supposed to simply go with the proposed removal, and then if you have other things to add, you add them in an orderly way. You don't simply say at the time of decision, oh, by the way, there were these other events that weren't charged, weren't in the proposed notice of removal, which I'm going to align as an independent basis for removing it. And that's the normal course, right? Normally, you would have a written charge for each charge on which the removal is based. Didn't they revise the notice of removal? I believe that's what happened. They revised it to add, did they? I believe that's what happened, was that it was revised to add the threatening charge. Okay, well, that certainly makes it two different charges, then. I was not aware that they revised it. All right. Okay. Mr. Harris? Certainly, yeah. It seems that our case law and the board's case law express as a cardinal principle that the decision, whether conduct requires removal, is one peculiarly for the agency to make and that the agency has a broad range of discretion and that on review, either at the board or here, that discretion will be honored unless it was exercised in a highly unreasonable way. Would you accept that as the thrust of the law? In other words, we don't second-guess, the board doesn't second-guess, the real judgment call can be made by the responsible officials of the employing agency. I would accept that as the thrust of the law. Now, if that really is the dominant principle of these penalty review cases, why shouldn't it be routine that where one of two charges or some other subset is not found to be proven that the matter should go back to the employing agency for them to make that very judgment call? Why shouldn't that be the norm? Well, Your Honor, the norm should be that if the agency has indicated that it wants some lesser penalty for a limited charge, then that should be honored because that's within their discretion. Why isn't it in their discretion whether or not they make a series of predictive judgments as Judge Bryson's question earlier incorporated, that if only charge one is sustained, we want the penalty to be X. If charge one and two are sustained, we want the penalty to be Y. It's a very burdensome rule to require them, particularly where there may be four, five, six, seven different charges or specifications under a charge, to have a matrix where they have a separate penalty under every possible permutation of what may happen at the board level. That doesn't seem like a reasonable suggestion at all. And so if they're silent, but less than all the charges are sustained, in order for the agency to exercise their discretion, it would have to go back to them, wouldn't it? Well, Your Honor, there's also an interest in taking care of these matters and getting a final decision in these matters. The agency is certainly capable if it so desires in the first instance and if it believes that in its discretion one charge is not serious enough to warrant the penalty that it is seeking to say so. Don't we have a situation here, if you look at page 460 of the appendix, where it sounds very much as though the agency was sort of on the edge about removing something. If you look, for example, at line 12, and this is the deciding official's testimony, now did you consider any other penalties, so to speak, other than removal? And he seems to say, well, if I had another position available, I might not have removed him. It sort of suggests that this conduct, even with the threat charge involved, wasn't viewed as so serious that it would automatically be removal as opposed to putting him in another position. Am I reading it incorrectly? I think he is stating there that that was something that he considered. But, of course, here the sustained charge was failing to carry out his duties, failing to perform his duties as a Federal Protective Service officer and checking on the security and federal duties. Your Honor, you're answering my question. My question is, given the fact that this guy said that if I had another position, I might have put him in that instead of removed him, doesn't that sort of suggest that they were sort of on the edge about whether to remove this guy or do something else to him? Well, I think he says, Your Honor, under the circumstances, we had no other positions that were available for Mr. Zweigle. Under the circumstances being the circumstances of the conduct that he was charged with and that was sustained, that he wasn't performing his job. If he's not performing his job, it's hard to see how another position would be appropriate. Well, you seem to be suggesting as the right standard, if you can correct me if this is not an inaccurate characterization of the position, that it seems to be that if the agency has said expressly, Your Honor, by clear implication, that it would have imposed a lesser penalty, then in that situation you would demand that if the agency is silent, then we don't demand, even if the penalty that was, the charge that was sustained was a more serious charge in our view. I think that is correct, Your Honor. But I don't think that squares with the post-Lachance law that I'm familiar with. Are you familiar with a case called Guy's, I guess, Guy's against Department of Justice, actually. Is that thing available? No, I'm afraid it doesn't. This is sort of standard stuff. I don't think there's anything unique about this case. We say, in cases in which the court is upheld fewer than all charges, the court is not invariably remanded. So far, so good. Instead, the court has considered the number and seriousness of the charges as compared to the number and seriousness of those that have not been sustained. When we have invalidated most of the charges, or the invalidated charges are the most serious charges, we have vacated the penalty and remanded for reconsideration in light of the significant change in the number and seriousness of the sustained charges. Not only and limited to situations in which the agency has announced that it would have had a lesser penalty. That, it seems to me, from my recollection, and as I wrote that case, my recollection is pretty good, is a correct statement of where we are, and not that we only demand when we see the agency come in and say we would give a lesser penalty. Your Honor, I think that there is a broad range of cases and a broad range of charges. There are charges made against individuals ranging from the sort of charges that we have in this case, failing to carry out basic functions of the job, to misusing a copier for personal purposes. There's a broad range of seriousness, but both of the charges in this case are of the serious variety. One was threatening an employee. Another was failing to perform basic functions, not just basic functions, but failing to patrol federal buildings, failing to check on the guards at federal buildings. It seems to me the biggest problem in your case is those two words, more important. Because if there's any indication in the record as to what the agency regarded as the more important charge, it seems to me it's kind of hard to say that's not the threat charge in light of the fact that the very deciding official uses the word more importantly. I mean, how do you avoid the clear implication of those two words? I think, Your Honor, that... Rhetoric? Was it just rhetorical, or what? I think it was to a certain extent, Your Honor, because I think if you look at what he said about the other charge and the seriousness of the other charge, you know, his decision states, Your well-documented history of failing to perform even the most basic assignments is highly detrimental to the mission of this organization. This is about the charge that was sustained. Repeated painstaking and time-consuming efforts on our part to correct your behavior have been fruitless. You have offered no reasonable explanation whatsoever for your misconduct. He was talking exclusively about the charge that was sustained when he was saying that. That language can hardly be squared with a desire not to impose the penalty of removal here. That language indicates that that other charge was also seen as a very serious charge, as it rightly is seen as a very serious charge, failing to provide the required security at federal buildings, particularly in this day and age. So that language, while he uses the two words more importantly, as you point out later on, that language can hardly be seen as consistent with the desire after there has been two separate suspensions for this misconduct, after there has been a performance improvement plan implemented that has not been followed by Mr. Zweigel, the only next step, the only way to escalate that penalty, is to remove him at that point. And this language can hardly be seen as an intent to do something other. Mr. Harrington, you didn't author the brief that was submitted to you. I did not. That was done by Mr. Hipp. Yes, Your Honor. So to the extent that there's been comment or criticism of the truncated quotation in terms of you represent the government, and it's a government brief, of course, but I just want to be clear that the omission on page 16 of the brief is not directly your fault to the extent that you weren't the author. And as a matter of curiosity, can you inform us where is Mr. Hipp? Mr. Hipp had other responsibilities that prevented him from arguing today, Your Honor. He was arguing in a higher court? No, I don't believe that would be the case, and I do not remember the details of why the case was transferred. When was it reassigned to you? It was reassigned to me in December, Your Honor, shortly before the holidays. And you've been commenting on parts of the testimony. Have you studied the entire trial record? I have studied the appendix, Your Honor. I have not gone back and reviewed the entire trial. But the appendix are just short snippets of partial testimony of some of the witnesses. That is correct, Your Honor. Do you think that's an adequate preparation? It's the preparation that I was able to do given the time that I had. Did you not have the full transcript available to you? I believe we had the full transcript in our office. It's very disturbing to me because we're asking you questions that have to do with testimony versus testimony, with weighing and with trying to get the sort of net assessment of the probative power of all the testimony. And if you've only read the convenient excerpts that support the government, that the government put in the appendix, that just seems like a very unfortunate preparation by government attorneys. And I'm afraid it's typical, and that's why I ask the question. Because very often, attorneys for the government of late haven't read anything except the supportive little snippets of testimony from the appendix and have no idea what the rest of the trial involves. It risks our having much less confidence in the answers of government counsel if the practice is going to be that I've read the testimony that supports us, but I haven't read the testimony that supports the petitioner. Because the case law definition of what constitutes substantial evidence requires you to balance the evidence pro and con of each proposition. And if the government attorney has only looked at the evidence that supports the government view and hasn't looked at the negating effect of the contrary testimony, the analysis is totally incomplete. It doesn't follow the case law. It's a matter for the supervisors in the section to consider, not just perhaps anything that can be settled here today. I would note, Your Honor, that I have gone and read testimony that was cited by Mr. Zweigel in support of his arguments. I have not limited myself to testimony and to documents and to other things that simply support it. That's an important correction. Thank you. All right, Mr. Harrington, we'll hear now a rebuttal by Mr. Howes. You have two minutes, Mr. Howes. Thank you, sir. Your Honor, I'll just point out that the statement by Mr. Greco in the letter of removal where he says, as a law enforcement officer in the Department of Homeland Security, FPS, for you to make a threatening comment in the workplace is so entirely contrary to our mission and values that I cannot possibly have you continue as a representative of this agency. And he precedes that with more importantly than deliberately refusing to carry out assigned duties. I think this demonstrates unequivocally that the reason that Mr. Zweigel was being terminated was in fact because he had supposedly made a threatening comment and that charge, as we know from the record, was not sustained by the administrative law judge. So, clearly, that in conjunction with Mr. Greco's testimony that we saw on page 460 where even after having authoring that letter, he indicated that he considered other positions or that he didn't have any other positions available makes it clear that some lesser penalty may have been appropriate under the circumstances. And I think once you take that threatening comment out of the equation, then there is at least the idea and the concept that the agency would have given a lesser penalty to Mr. Zweigel, perhaps a 30-day suspension, perhaps a desk job, perhaps some kind of retraining, which I think is a viable alternative. I think we have the point clearly in mind. Can you address whether there was any testimony that could justify or explain away the portion of this list of buildings that on all the days in question he didn't visit? How come? Do we have any idea from the testimony why he didn't get to each and every building on all the relevant days? And what I think that's important for the court to understand is that these buildings, they run from Anne Arundel County to Baltimore County, some 30-some miles distance. I'm asking for testimony. Can you cite any testimony that we could read to get an understanding of how it came to be that day after day he would visit 10 of 15 or 9 of 15 or 13 of 15 or whatever the fraction is instead of all. I don't believe the record has testimony to that effect, Judge. Thank you, Mr. Howes. Thank you, Mr. Harrington. We'll take the case on your advice. Thank you very much. Thank you.